# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

S.E.I.U. LOCAL NO. 4 PENSION FUND,
S.E.I.U. LOCAL NO. 4 HEALTH &
WELFARE FUND and HAL RUDDICK,
Trustee on behalf of both funds,

    Plaintiffs,

    v.

PINNACLE HEALTH CARE OF
BERWYN LLC, an Illinois limited liability
company,

    Defendant,

and ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES,

    Respondent,

and PREMIER BANCORP,

    Objector.

No. 06 C 0040
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is a motion for release of funds following the finding of summary judgment in favor of Plaintiffs. The underlying action was an ERISA case. Plaintiffs, the trustee of a union pension fund and a union health and welfare plan, sued Pinnacle Health Care for delinquent contributions. I awarded Plaintiffs $110,196.65 on July 3, 2007. On September 10, 2007 a Consent Judgment was entered in favor of Plaintiffs in the amount of $40,180.25. On September 17, 2007, Plaintiffs filed a Motion for Release of Funds held by the Attorney General of the State of Illinois for sums due Pinnacle from the Illinois Department of Healthcare and Family Services

(IDHFS). On September 19, 2007, I ordered IDHFS to release $77,536.55 to Plaintiffs, which was done on October 10, 2007. Plaintiffs filed a second Motion for Release of Funds due Pinnacle from the IDHFS on November 30, 2007. This time, however, Premier Bancorp intervened pursuant to Federal Rule of Civil Procedure 69(a)[1], objecting to the release of funds on the ground that it possessed a perfected security interest in Pinnacle's accounts receivable, which Premier argues has priority over Plaintiffs' judgment lien.[2] I granted Plaintiffs' motion for leave to take discovery concerning Premier's claim to have a superior interest in the funds being held by the IDHFS. Plaintiffs served a subpoena for documents and a deposition upon Premier. Premier timely produced approximately 1,200 pages of documents and appeared at the deposition through Regina Hirn, Vice President of Lending, whom Premier represented was the most knowledgeable person with regard to the loans to Pinnacle by Premier. Prior to the deposition, Plaintiffs alerted Premier's counsel that they sought information regarding whether or not Premier had declared Pinnacle in default, to which Premier's counsel responded that Plaintiffs could "certainly ask those questions to the bank's representative during the citation." However, at the deposition Ms. Hirn was not able, or perhaps unwilling, to testify as to whether Pinnacle

---

[1]The same counsel for Pinnacle entered an appearance on behalf of Premier, Pinnacle's creditor. Plaintiffs propose that this simultaneous representation creates an unacceptable conflict of interest and precludes the possibility of meaningful negotiation with either party.

[2]Pinnacle is a debtor under various debt instruments in favor of Premier, including most recently a Secured Promissory Note dated August 15, 2006 in the original principal amount of $1,246,200, due August 15, 2007, which was later modified to $1,245,450 due August 15, 2008. Additionally, a Security Agreement was executed between Pinnacle and Premier on March 28, 2003, securing a $250,000 debt maturing on April 15, 2008, and another Security Agreement dated August 15, 2006 secured a $864,570.63 debt owed by Pinnacle to Premier (collectively the "Security Agreement").

was in default of its obligations to Premier.³ And, when Plaintiffs' lawyer attempted to ask Ms. Hirn about whether or not Premier took any actions regarding Pinnacle's possible default, Premier's counsel objected on the ground that any inquiry into default, beyond what was produced in the documents, was irrelevant.

In addition to a release of the funds held by the IDHFS, Plaintiffs seek a finding of contempt and sanctions against Premier for failure to respond in good faith to Plaintiffs' subpoena. Premier also requests that I find Plaintiffs in contempt and enter sanctions pursuant to Rule 11 for Plaintiffs' "continued and unwarranted prosecution of motions against Premier." For the following reasons, I grant Plaintiffs' motions and deny Premier's motion for sanctions.

## I. Motion for Release of Funds

The issue is whether Premier's security interest has a priority over Plaintiffs' judgment lien with regard to Pinnacle's accounts receivable. Premier bears the burden of proving that its interest in the funds trumps Plaintiffs' judgment lien. *Liberty Leasing Co., Inc. v. Crown Ice Machine Leasing Co., Inc.*, 311 N.E.2d 250, 251-52 (Ill. App. Ct. 1974).

Throughout the briefing on this issue, Premier maintained that pursuant to its Security Agreement with Pinnacle, Premier holds a first and perfected lien on all of Pinnacle's collateral described in the Secured Promissory Note, including the sums due Pinnacle from the IDHFS. Plaintiffs do not dispute that Premier and Pinnacle entered into a Security Agreement nor that Premier filed a UCC statement on Pinnacle's receivables in April 2003.⁴ However, Plaintiffs

---

³ Ms. Hirn simply responded "I don't know" to any and all questions related to the status of Pinnacle's loans.

⁴Plaintiffs do question whether the Security Agreement was meant to extend to Pinnacle's Medicare reimbursements, which, Plaintiffs claim, would place the agreement in apparent

argue that the Security Agreement does not give Premier rights as a secured creditor under the UCC unless and until Pinnacle defaults on its loans. Premier's objections to Plaintiffs' motion presented no evidence of default nor evidence of any action taken by Premier to exercise its rights under any of the Security Agreements.[5] However, after the motion was fully briefed, and in response to Plaintiffs' motion for decision, Premier finally addressed the issue of default, asserting that the documents show Pinnacle made 14 late payments on its loan.[6] Premier also now argues that Plaintiffs' motion for release of funds itself constitutes a default under the terms of the Security Agreement.[7] And, finally, Premier points to a one-page "Disbursement Request Authorization" form of the 1,200 documents produced, which it claims rebuts Plaintiffs' charge that Premier never took any action to exercise its rights under the Security Agreement.

---

contravention of state and federal law. *See* 42 U.S.C. § 1396a(a)(32); 305 ILCS 5/11-3; 89 Ill. Admin. Code 140.27; *Klubeck v. Division Med. X-Ray, Inc.*, 439 N.E.2d 506, 509 (1st Dist. 1982); *Credit Recovery Sys. LLC v. Hieke*, 158 F. Supp. 2d 689, 696 (E.D. Va. 2001) However, given my ruling here and the fact that the parties did not address this issue in their briefs, I offer no ruling on the question.

[5]On one occasion, in December 2007, which was after service of the Citation to Discover Assets and after Premier's filing of its objection to the release of funds, Ms. Hirn sent an email to Pinnacle demanding proof of insurance and describing the failure to provide it as an event of default. That deficiency was cured, and there is no evidence Premier took any action beyond sending the email.

[6]The "Default" section of the Security Agreement provides a list of events that constitute a default under the Agreement, including "Grantor fails to make any payment when due under the Indebtedness."

[7]Another provision under the "Default" section provides: "Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender."

To be sure, Premier enjoys rights in Pinnacle's accounts receivable pursuant to the Security Agreement executed between them. That agreement entitles Premier to exercise its rights in the collateral, including Pinnacle's accounts receivable, in the event of a default, but gives Pinnacle possession and beneficial use of the collateral until default:

> Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement to the Related Documents, provided that the Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral.

The Security Agreement continues: "At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness." Accordingly, at *any* time, Premier is entitled to exercise rights of collection and notification, but those rights are distinct from those to which Premier is entitled to exercise in the event of default:

> If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Illinois Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies: [list includes acceleration of the debt, obtain deficiency judgment, among others].

The Security Agreement makes clear that Premier only takes on the rights of a secured creditor under the UCC after a default occurs. Default, therefore, is the essential prerequisite and in the absence of such, Premier cannot seize the collateral and apply it against the loan or otherwise prevent another creditor of the debtor from taking possession of the collateral. *See Martens v. Hadley Mem'l Hosp.*, 729 F. Supp. 1391, 1393-95 (D.D.C. 1990) (holding secured

creditor's priority did not suffice to quash writ of attachment where creditor never declared default and absent "the good faith execution of the affirmative remedies, such as acceleration, provided in the loan document."). In a case on facts similar to those presented here, the court rejected the bank's argument that its perfected security interest automatically gave it priority over a judgment creditor. *Frierson v. United Farm Agency, Inc.*, 868 F.2d 302 (8th Cir. 1989). The trial court stated and the Eighth Circuit agreed:

> Most secured loans provide for numerous events which constitute default, many of which are technical in nature and are inserted in the loan documents to enable the lender to declare the note in default when even a relatively minor problem arises with the loan or the debtor. Thus, at any given time many secured loans are technically in default, but are never treated as such by secured creditors. In addition, a secured party will occasionally . . . ignore a default which is more than just a technical default. If a secured creditor with a security interest over all the debtor's property is permitted to rely on default, whether technical or not, to prevent another creditor from executing on the debtor's property, while treating the loan as not in default when dealing with the debtor and others, severe inequities would result. . . . Such an approach would be against both the spirit and the letter of the Uniform Commercial Code.

*Id*. at 304-05.

The Eighth Circuit added that the bank could not "refuse to exercise its rights under the security agreement, thereby maintaining [the debtor] as a going concern, while it impairs the status of other creditors by preventing them from exercising valid liens. . . .[T]o do so would fly in the face of all of Article 9, which is premised on the debtor's ability to exercise rights in the property." *Id*. at 305.

The same principles apply here. I find that Premier does have a prior perfected security interest in Pinnacle's accounts receivable. However, despite the fact that Pinnacle may have

6

technically defaulted on its loan, because Premier did not declare Pinnacle's loan in default or follow procedures required by the Security Agreement to enforce its U.C.C. and contractual rights, Premier does not have a present right to the funds nor a basis on which to object to their release. Therefore, Plaintiffs' motion for release of funds is granted.

## II. Motions for Sanctions

I find that Premier's appearance at the deposition through Ms. Hirn and Premier counsel's deliberately obstructive objections during that deposition constitutes a failure to comply with Plaintiffs' subpoena. *See Black Horse Lane Ass'n. v. Dow Chem. Corp.*, 228 F.3d 275 (3d Cir. 2000) (affirming sanction for party's production of witness unprepared for deposition and lacking knowledge of subjects identified in 30(b)(6) notice). Plaintiffs asserted at the outset that the mere existence of a Security Agreement between Premier and Pinnacle was not dispositive of the issue of priority, and Plaintiffs requested discovery to determine the existence of a default. Premier blocked Plaintiffs inquiry on that issue and repeatedly asserted that any evidence of Pinnacle's default was irrelevant. Then, at the last minute, and in Premier's third opportunity to respond to Plaintiffs' motion, Premier made an attempt to assert that a technical default existed and that Premier did in fact exercise rights under the agreement. This was too little and much too late. Therefore, I assess against Premier Plaintiffs' attorneys' fees and costs in connection with Ms. Hirn's deposition and the prosecution of Plaintiffs' motion for rule to show cause and motion for finding of contempt and entry of sanctions.

Regarding Premier's Rule 11 motion, Plaintiffs' motions were not improper, nor were their arguments regarding the issue of default frivolous. As discussed *supra*, despite the fact that Plaintiffs conceded Premier's prior perfected security interest in Pinnacle's receivables, the issue

7

of Pinnacle's default was not irrelevant. Accordingly, I deny Premier's motion for sanctions and award Plaintiffs their fees and costs incurred in responding to the motion.

**III. Conclusion**

For the reasons stated above, Plaintiffs' motion for release of funds is granted. I order the Illinois Department of Healthcare and Family Services to release $68,797.12 to Plaintiffs by mailing a check in that amount made payable to SEIU Local No. 4 Benefit Funds to the following address within 28 days after entry of this Order:

> David Huffman-Gottschling
> Jacobs, Burns, Orlove, Stanton & Hernandez
> 122 S. Michigan Ave., Ste. 1720
> Chicago, IL 60603

Plaintiffs' motion for sanctions is also granted and Plaintiffs are awarded attorneys' fees and costs in connection with (1) Ms. Hirn's deposition, (2) the prosecution of Plaintiffs' motion for rule to show cause and Plaintiffs' motion for finding of contempt and entry of sanctions, and (3) responding to Premier's motion for Rule 11 sanctions.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: May 9, 2008